**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**TROY G. AVERA,**

      **Plaintiff,**

**vs.**                               **Case No. 4:09cv218-RS/WCS**

**AIRLINE PILOTS ASSOCIATION
INTERNATIONAL, et al.,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION[1]

Defendants' motion to dismiss, doc. 25, is ready for review. Defendants[2] also filed an affidavit with exhibits in support of the motion. Doc. 26. Plaintiff has filed his response, doc. 32, to the motion to dismiss and his affidavit and exhibits in support of

---

[1] Plaintiff initiated this case on June 16, 2009, against several Defendants. Doc. 1. Subsequently, Plaintiff amended his complaint to bring claims only against the Airline Pilots Association International and the Airline Pilots Association Master Executive Council, and terminating claims against the United States. Doc. 14. On November 20, 2009, the United States moved to Intervene in this case. Doc. 28. That motion was granted, doc. 39, over Plaintiff's objection. Doc. 31.

[2] Although Plaintiff named two Defendants in this case, it has been explained that the "Airline Pilots Association, Master Executive Council (UAL Corporation and United Airlines, Inc.) is the Air Line Pilots Association United Airlines Master Executive Council ('United MEC'). The United MEC is not a separate legal entity from Defendant Air Line Pilots Association, International, and is not related to UAL Corporation or United Airlines, Inc." Doc. 21, p. 1, n.1.

his opposition, doc. 33. Defendants' were given leave to file a reply to Plaintiff's response, docs. 35-36, and Plaintiff was given leave to file a sur-reply to Defendants' reply. Docs. 37-39. Finally, a notice of supplemental authority was filed on May 28, 2010, by Defendants, doc. 41, and the United States has filed a response, doc. 42, as Interveners, defending the constitutionality of the federal law.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). However,

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* [Twombly], at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

*Pro se* complaints are held to less stringent standards than those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).  Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at 1966.

Analysis of a motion to dismiss is generally limited to the face of the complaint and any attachments.  Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997), *citing* 5 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1356 at 590-92 (1969) (Wright & Miller).  "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."  Brooks, 116 F.3d at 1369, *quoting* Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.");  *see also* Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  Thus, in ruling on a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.  Day v. Taylor, 400 F.3d 1272,

1276 (11th Cir. 2005); *see also* Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337, 1340 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."), *cited in* SFM Holdings, Ltd. v. Banc of America Securities, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).

Here, Defendant submitted several exhibits, doc. 26, along with the motion to dismiss, doc. 25. To the degree some of those documents are intrinsic to Plaintiff's amended complaint, those exhibits will be considered as explained more fully upon review of the specific point for which the exhibit is presented. However, some of the documents presented as exhibits (Exhibits D, E, and F, doc. 26), are not part of Plaintiff's claim, not part of the background facts of Plaintiff's case, and are unrelated court documents from other court cases. Those exhibits are not properly considered on a motion to dismiss as it would have been necessary to construe the motion as one for summary judgment under Rule 56(c) under those circumstances. The motion will be considered as filed, limited to the relevant pleadings as explained above.

**Allegations of the Amended Complaint, doc. 14**

Plaintiff brings claims for age discrimination, violations of the Employee Retirement Income Security Act (ERISA), the Fair Treatment of Experienced Pilot Act (FTEPA), and the Fair Labor Standards Act (FLSA). Doc. 14, p. 2. The Defendant Airline Pilots Association International (ALPA) is a labor organization for air carrier pilots, and the United Airlines Master Executive Council is a subdivision of the Association. *Id.*, at 2-3. Plaintiff was employed by United Airlines as a pilot from May 8, 1995, until May 31, 2007, although Plaintiff was "removed from flying status by United

Airlines" on May 12, 2007, when he reached age 60.  *Id.*, at 3, 6.  Plaintiff alleged he was terminated from his employment on June 1, 2007, solely because he reached age 60.  *Id.*, at 6.[3]

In 1959, the FAA adopted a regulation which became known as the "Age 60 Rule" which required pilots to stop flying commercial aircraft at age 60.  *Id.*, at 4. Plaintiff became a pilot after 1959.  Plaintiff filed a charge with the EEOC and received his notice of right to sue on April 2, 2009.  *Id.*, at 5.

Plaintiff alleges that in 2006, the FAA permitted foreign pilots, over age 60, to fly aircraft into and out of the United States, but "continued to apply the Age 60 Rule to U.S. citizen air carrier pilots."  *Id.*, at 5.  By 2007, the FAA announced it would change the Age 60 Rule, and permitted exemptions or waivers from the rule only if a request was jointly presented by the pilot and his or her air carrier.  *Id.*, at 5-6.  Plaintiff filed a request for a waiver, but United Airlines failed to join his request, and the FAA subsequently denied Plaintiff's request.  *Id.*, at 6.  The Pension Benefit Guarantee Corporation (PBGC) used Plaintiff's termination by United Airlines at age 60 "as grounds for finding that [Plaintiff] had volunteered for 'early' retirement and reduced the monthly pension benefit payments by approximately one half."  *Id.*, at 6.

Count I of the amended complaint is an age discrimination claim brought under the Age Discrimination in Employment Act; count II is a claim under the Employment Retirement Income Security Act; count III alleges the Defendant breached its duty to provide fair representation and breached its fiduciary duty owed to Plaintiff; and count IV

---

[3] At another point in the complaint Plaintiff indicates he was terminated on May 31, 2007.  Doc. 14, p. 11.  That is the date accepted by Defendant, doc. 25, and is used most consistently by Plaintiff.  It is only one day different and does not matter.

is a constitutional challenge to both the Age 60 Rules and the FTEPA for violating the

Due Process and Equal Protection clauses of the Constitution, as well as violating the

prohibition against Bills of Attainder.  Doc. 14, pp. 6-23.

**Motion to Dismiss, doc. 25**

Defendant ALPA, the union, asserts that the ADEA claim is based on the ALPA's

conduct was mandated by the Age 60 Rule and the FTEPA.  Doc. 25, pp. 16-17 (pages

5-6 of the "argument" section of the motion to dismiss).[4]  Defendant claims it is

protected under 49 U.S.C. § 44729(e)(2) from liability against Plaintiff's claims.  *Id.*, at

17.  That provision states:

> An action taken in conformance with this section, taken in conformance
> with a regulation issued to carry out this section, or taken prior to the date
> of enactment of this section in conformance with section 121.383(c) of title
> 14, Code of Federal Regulations (as in effect before such date of
> enactment), may not serve as a basis for liability or relief in a proceeding,
> brought under any employment law or regulation, before any court or
> agency of the United States or of any State or locality.

49 U.S.C. § 44729(e)(2) (2007).

Section 44729(e)(2) plainly bars all of Plaintiff's claims that complain about

ALPA's compliance with the Age 60 Rule both before and after the enactment of the

Fair Treatment of Experienced Pilot Act (FTEPA).  Plaintiff, however, attacks that

provision of the FTEPA on grounds that it violated his federal constitutional rights.  Doc.

14, pp. 22-25.

---

[4] The reference to the motion to dismiss is to the page number listed on the
electronic docket and, in this first citation, a parenthesis is used to confirm the
corresponding page number of the document.  The inclusion of the table of authorities
and contents altered the sequential page numbering of the document.  in the electronic
docket.  Both citations are unnecessary for later references.

Plaintiff cannot get there from here in this suit.[5] First, Congress has plainly precluded every action taken in conformance with the former Age 60 Rule and the current Rule. 49 U.S.C. § 44729(e)(2). Second, a private entity like Defendant ALPA cannot be sued for following federal law. For example, it has been held that when Congress creates a limitation on liability for compliance with federal law, or even completely forecloses relief for example, through immunity, it does not violate due process. *See* Denson v. United States, 574 F.3d 1318, 1347 (11th Cir. 2009) (concluding that "state law liability simply cannot attach to the acts taken by federal officers in the course of their duties and committed in compliance with federal law"); *see also* Ohio v. Thomas, 173 U.S. 276, 283, 19 S.Ct. 453, 455, 43 L.Ed. 699 (1899) ("When discharging [their] duties under [F]ederal authority pursuant to and by virtue of valid Federal laws, [Federal officers] are not subject to arrest or other liability under the laws of the State in which their duties are performed."). Due process is not violated by the decision of Congress to declare that one who complies with federal law should not be liable for that compliance. See Coronado v. Bank Atlantic Bancorp, Inc., 222 F.3d 1315, 1391-21 (11th Cir. 2000) (concluding immunity existed under "safe harbor" provisions of the Annunzio-Wylie Act); *see also* 29 U.S.C. § 260 (providing a safe harbor for good faith belief by employer that the act or omission did not violated the Fair Labor Standards Act). Thus, all of Plaintiff's constitutional claims, and Plaintiff's claims that Defendant ALPA violated the ADEA, ERISA, or any other law or duty, by complying with federal law, must be dismissed.

---

[5] Indeed, Plaintiff has already traveled this road. Judge Hinkle rejected Plaintiff's claims that the Age 60 Rule is unconstitutional. Avera v. United Air Lines, 686 F.Supp.2d 1262, 1265 (N.D. Fla. 2010).

There are portions of Plaintiff's complaint, however, that attempt to make claims for actions by Defendant ALPA not necessarily in direct compliance with a federal law. These will be addressed sequentially ahead.

**ADEA claims not based upon compliance with the Age 60 Rule**

Plaintiff claims that Defendant ALPA is liable to him for failing to obtain from Congress a suitable change to the Age 60 Rule. He argues this claim in part as a violation of the ADEA.

Carswell v. Air Line Pilots Ass'n Intern., 540 F.Supp.2d 107, 110 (D. D.C., 2008) is dispositive of that claim. In that case, the plaintiff, who was terminated from U.S. Airways, sued a number of defendants, including the ALPA, claiming that the defendants refused to protect his employment status by retaining him, or supporting his request for an exemption from the Age 60 Rule, or "lobbying for a change to the Age 60 Rule." Carswell, 540 F.Supp.2d at 113. As applied in Carswell and here, the relevant part of the ADEA states: "It shall be unlawful for a labor organization" to, *inter alia*, "cause or attempt to cause an employer to discriminate against an individual in violation of this subsection." 29 U.S.C. § 623(c)(3), *quoted* at 540 F.Supp.2d at 115. However, the ADEA also provides a defense, "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business . . . ." 29 U.S.C. § 623(f)(1). Relying on persuasive reasoning from the Sixth Circuit, the Carswell court concluded that the Age 60 Rule qualified "as a BFOQ defense . . . ." *Id.*, at 115-116, *citing to* Coupé v. Fed. Express Corp., 121 F.3d 1022 (6th Cir. 1997). A bona fide occupational qualification was deemed to have been established by the FAA when it promulgated the Age 60 Rule. *Id.*, at 116. Importantly, the court noted that while the

age limit might not be accepted as a BFOQ defense by an individual private employer, it is sufficiently established as such for ADEA purposes when adopted as a federal agency rule *by which all employers in the field are bound.* *Id.*, *quoting* Coupé, 121 F.3d at 1026.

While requiring retirement at age 60 is "perhaps discriminatory in a technical sense," it is, nevertheless, required by federal law and therefore, not in contravention of the ADEA.[6] Whether the action is challenged directly against the employer who

---

[6] A mandatory retirement provision for airline pilots had been upheld against an ADEA challenge. *See* United Air Lines, Inc. v. McMann, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977) (upholding validity of the United Airlines retirement income plan as not being a "subterfuge" to evade the ADEA, which was passed 26 years after establishment of the retirement plan and rejecting the argument that mandating employees to retire at age 60 violated the ADEA) (superceded by statute). However, after the McMann decision, Congress amended the Act to "prohibit the mandatory retirement of a protected individual because of his age." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 114, 105 S.Ct. 613, 618, 83 L.Ed.2d 523 (1985) (holding that "[t]he ADEA requires TWA to afford 60-year-old captains the same transfer privileges that it gives to captains disqualified for reasons other than age"), *citing* 29 U.S.C. § 623(f)(2). Yet, it is still recognized that the ADEA creates an exception (29 U.S.C. § 623(f)(1)) from the prohibition against mandatory retirement before age 70 from a position where age is found to be "a bona fide occupational qualification (BFOQ) reasonably necessary to the normal operation of the particular business." Western Air Lines v. Criswell, 472 U.S. 400, 417-23, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985) (affirming jury verdict that concluded Western's mandatory retirement rule for flight engineers did not qualify as a BFOQ even though it purportedly was adopted for safety reasons because the standard is one of "reasonable necessity," not merely reasonableness). In reaching its decision as to a policy for flight engineers, the Criswell Court noted that the FAA had:

> justified the retention of mandatory retirement for pilots on the theory that "incapacitating medical events" and "adverse psychological, emotional, and physical changes" occur as a consequence of aging. "The inability to detect or predict with precision an individual's risk of sudden or subtle incapacitation, in the face of known age-related risks, counsels against relaxation of the rule." 49 Fed.Reg. 14695 (1984).

472 U.S. at 404, 105 S.Ct. at 2746.

terminated Plaintiff, or against the union who was also required to comply with the same law, there is no ADEA violation.  What is lawful for the employer cannot be unlawful for a union, where, as here, it is alleged that the ALPA should have taken actions contrary to a long-established and widely upheld law.[7]

Plaintiff attempts to place blame against the ALPA for opposing changes to the Age 60 Rule.  Doc. 14, pp. 8-9.  Plaintiff asserts the ALPA should have known it was not "safety related," and should have sought to support waiver requests.  *Id.*, at 8-10. Plaintiff alleges the Defendant opposed changes in the collective bargaining agreement to allow transfers into other positions.  *Id.*, at 10.  Further, Plaintiff alleged he "has reason to believe that the Defendants, ALPA and the UAL MEC, had opposed granting a leave of absence" for Plaintiff and other pilots who were approaching age 60 and were anticipating a rule change.  *Id.*, at 9-10.

Yet Plaintiff also alleged that he requested his employer, United Airlines, to join in his request to the FAA for an exemption from the Age 60 Rule, as is required by the FAA.  The employer declined to join in his request, and the FAA denied the request. Indeed, Plaintiff acknowledges that the FAA issued "blanket denials" of waiver requests from the Age 60 Rule.  *See* doc. 14, p. 8.  Actions by United Airlines and the FAA are

---

[7] Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 120, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) concluded that:

> The Act does not require TWA to grant transfer privileges to disqualified captains. Nevertheless, if TWA does grant some disqualified captains the "privilege" of "bumping" less senior flight engineers, it may not deny this opportunity to others because of their age.

Thurston, 469 U.S. at 120-121, 105 S.Ct. at 621.  The Thurston case, therefore, stands on a different footing.  There are no allegations here that others are permitted to "bump" into positions other than pilot and Plaintiff is not.

not actions attributable to the ALPA, and the fact that the Defendant did not lobby in the way desired by Plaintiff is not evidence of age discrimination. Plaintiff acknowledges that a "number of Local Executive Councils" which are subdivisions of the UAL MEC, "passed resolutions opposing any change to the Age 60 Rule." Doc. 14, p. 11. Furthermore, Plaintiff states that one such resolution supported "the current FAA **Safety policy requiring pilot retirement at age 60.**" *Id.* (emphasis in original). Plaintiff's argument that the Defendant should have acted in Plaintiff's interest, thus, is contrary to the desires of other pilot organizations. Moreover, Plaintiff's allegation that the Defendant should have known the rule was not based on safety concerns flies in the face of the many cases which have upheld the Age 60 Rule. *See*, *e.g.,* Air Line Pilots Association, International v. Quesada, 276 F.2d 892 (2d Cir. 1960), *cert. denied*, 366 U.S. 962 (1961) (holding the age 60 rule was not arbitrary or discriminatory); O'Donnell v. Shaffer, 491 F.2d 59 (D.C. Cir. 1974) (adoption of the Rule did not require formal adjudicatory hearing); Coupé v. Fed. Express Corp., 121 F.3d 1022 (6th Cir. 1997); Carswell v. Air Line Pilots Ass'n Intern., 540 F.Supp.2d 107, 115 -116 (D. D.C. 2008); Prof.'l Pilots Federation v. F. A. A., 118 F.3d 758 (D.C. Cir. 1997); Air Line Pilots Ass'n, Int'l v. Quesada, 276 F.2d 892, 894-98 (2d Cir.1960) (rejecting challenge to the Age 60 Rule). Plaintiff's allegations fail do not demonstrate discrimination based on age. The ADEA claim in count I should be dismissed.

**ADEA claims for denial of a leave of absence and an instructor position, claims not based upon compliance with federal law**

This claim contends that Defendant ALPA should have done something to ameliorate the effect of the Age 60 Rule, and by not doing so, violated the ADEA. It is not a claim that depends directly upon compliance with the Age 60 Rule.

Defendant contends Plaintiff's claims that he was denied a leave of absence and denied an instructor position are barred because Plaintiff did not include those allegations in the charge of discrimination he filed with the EEOC. Doc. 25, p. 21-23. Further, Defendant argues that Plaintiff has not even alleged that he ever applied for an instructor's position. Doc. 25, p. 24.

In Carswell, the court noted that plaintiff's claim that he was not offered another employment position was insufficient because Plaintiff failed to allege that he was qualified for another job for which he applied, but was denied the position due to his age. 540 F.Supp.2d at 117. Plaintiff did not allege that he applied for an instructor position for which he was qualified, nor does he allege he was denied such a position because of his age. Furthermore, the ADEA does not require an employer to seek another employment opportunity for an employee who is being discharged due to a mandatory retirement age. *See* Carswell, 540 F.Supp.2d at 117, *citing to* EEOC v. Sperry Corp., 852 F.2d 503, 509 (10th Cir. 1988) (stating "the ADEA does not require special treatment for older workers"); Tice v. Lampert Yards, Inc., 761 F.2d 1210, 1217 (7th Cir. 1985) (rejecting the claim that an employer had an affirmative duty under the ADEA to retain him by creating a new job or bumping another employee); *see also* Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982) (concluding "the ADEA does not

require an employer to accord special treatment to employees over forty years of age."),

*cert. denied*, 459 U.S. 1103 (1983). As stated by the <u>Carswell</u> court, "if an employer

terminates its employees for reasons that do not run afoul of the ADEA, then its failure

to find new positions for those same employees cannot run afoul of the ADEA, either."

<u>Carswell</u>, 540 F.Supp.2d at 117-118. Therefore, the claim that Defendant is liable for

not offering another job to Plaintiff is insufficient on its face.

Even if Defendant did oppose Plaintiff's employer granting Plaintiff a leave of

absence, that employment decision was ultimately made by United, and liability is

inappropriate against the Defendant. The union cannot be faulted for an employer

deciding whether or not to grant a leave of absence to an employee. Plaintiff alleged in

the amended complaint that he requested a leave of absence in January, 2007, and

stated his request:

> was not granted by United Airlines, though United grants leaves of
> absence given, for a variety of reasons to other pilots, Plaintiff has reason
> to believe that the Defendants, ALPA and the UAL MED, had opposed
> granting a leave of absence in Plaintiff's case, was who approaching age.

Doc. 14, p. 11. That allegation falls short of alleging discrimination, even *if* Defendant is

responsible for United's decision. The motion to dismiss should be granted on these

grounds. The court need not decide whether these claims were administratively

exhausted.

**Claims concerning the bond sale and distribution of notes proceeds, claims not based upon compliance with federal law**

This is another allegation that the ALPA should have done more to ameliorate

the effects of the Age 60 Rule. Plaintiff challenges the distribution formula used for the

proceeds of the UAL Corporation bonds, "which resulted in Plaintiff receiving an amount

that was substantially less than younger and less senior pilots and the ALPA devised

formula discriminated against Plaintiff based solely on Plaintiff's age." Doc. 14, p. 12, ¶

53. Further, in supporting his claim for breach of the duty of fair union representation,

Plaintiff alleged that the Defendant breached its duty by:

> Devising a distribution formula, for the approximately 8,000 United Pilots, to disburse the proceeds of the sale of UAL Corporation Bonds of worth approximately Five Hundred Million Dollars ($500,000.00),[8] to compensate the United Pilots for loss of pension plan termination, which discriminated against Plaintiff, and was based solely on that formula which, because of the Age 60 Rule requiring "early" retirement, resulted in younger Flight Officers (Pilots0, younger than age 40, with levels of seniority equal or comparable to Plaintiff, receiving substantially larger monetary distributions from the sale of the UAL Bonds than the distribution of $26,000.00 received by the Plaintiff, considering that the pilots at United Airlines had taken an approximately fifty percent (50%) salary reduction after 9-11 and during the UAL bankruptcy and termination of the Pilots pension "A" plan reducing monthly benefits for Plaintiff to $1,400.00 per month.

Doc. 14, pp. 20-21, ¶76(o). This is read as a part of the fair representation claim, which

will be discussed ahead.

**Violation of the Employee Retirement Income Security Act**

Plaintiff alleges that Defendant negotiated a retirement compensation package

which eliminated certain benefits for Plaintiff after retirement. Doc. 14, p. 15. Plaintiff

claims the benefits eliminated "discriminated against" him "based solely on attaining a

length of service that would be limited solely because of the Age 60 Rule." *Id.* Plaintiff

claimed his retirement pay and compensation were lowered, discriminating against him

and benefitting younger ALPA pilot members. *Id.* This claim, therefore, involves an

---

[8] Presumably Plaintiff's text is correct, although the numerical listing is not the equivalent. Doc. 14, p. 20, ¶ 76(o).

assertion that the union should have done something to ameliorate the effect of the Age 60 Rule, and by not doing so, violated ERISA.

Defendant contends that Plaintiff's ERISA claim fails in that Plaintiff has not identified the ERISA provision which he contends has been violated. Doc. 25, pp. 35-36. That point is valid. Plaintiff has not made any factual allegations which support an allegation of an ERISA violation, which identify in what way ERISA was violated, or which explain what provision of ERISA was violated. This vague and conclusory allegation cannot support an claim for a violation of ERISA.[9] The Court, nor Defendant should have to guess at the type of plan covered, when it was violated, what provision was violated, and the like. The motion to dismiss the ERISA claim should be granted.

**Breach of Duty of Fair Representation and Breach of Fiduciary Duty**

Plaintiff alleges that the Defendant "was the certified bargaining agent for airline pilots, including Plaintiff, in the employ of United Airlines, Inc." Doc. 14, p. 16. Plaintiff contends he was owed "a duty of fair, equal and effective representation." *Id.* He claims Defendant breached that duty in a multitude of ways.[10] Essentially, Plaintiff's assertions are based on his claim that the Union was actively lobbying the FAA and Congress to continue the Age 60 Rule, opposing waivers or exemptions from the Age

---

[9] Furthermore, Defendant points out that distribution of notes or bond proceeds is not an "employee benefit pension plan" under ERISA. That point may or may not be valid, yet without any factual allegations explaining the "plan," how it is violated, when, and the like, the amended complaint is insufficient on its face.

[10] There is no need to address claims that have already been addressed and dismissed under the heading of breach of a fiduciary duty. For example, Plaintiff claims Defendant breached it duty in preventing Plaintiff from being offered a pilot instructor position, disbursing proceeds from the sale of UAL Corporation bonds, and preventing United from filing a joint request with Plaintiff for an exemption from the Age 60 Rule, opposing waivers. Doc. 14, pp. 19-21.

60 Rule, knowingly misrepresenting in its lobbying efforts that "none of the ALPA pilots members, which included Plaintiff, did not want any change in the Age 60 Rule," lobbying Congress for certain language in the FTEPA, drafting the non-retroactivity language and the protection from compliance language in the FTEPA, proclaiming the Age 60 Rule was safety related while negotiating to extend the retirement age to 65, negotiating reductions in compensation which would be further limited by application of the Age 60 Rule, and negotiating a retirement compensation package in the collective bargaining agreement which discriminated against Plaintiff due to length of service and application of the Age 60 Rule. Doc. 14, pp. 19-22.

All allegations concerning the Defendant's "drafting" language for the FTEPA must be dismissed. Congress is responsible for drafting and enacting laws and the causation is simply too great between the submission of suggested language, and the ultimate act of enacting federal law.

The claims concerning the lobbying efforts of the Defendant also lack merit. There is nothing unlawful in lobbying for the enactment of a statute, or amendments to a long-standing rule or law. In Jones, the court noted that "when a person petitions the government for redress, the First Amendment prohibits any sanction on that action . . . so long as the petition was in good faith." Nader v. Democratic Nat'l Comm., 567 F.3d 692, 696 (D.C. Cir. 2009), *quoted in* Jones, 2010 WL 2036955, at *7. Because the FTEPA meets constitutional scrutiny, the lobbying efforts were in good faith.

Moreover, Defendant is correct that there is a six-month statute of limitations applicable to claims brought for breach of the duty of fair representation. Doc. 25, p. 17. Plaintiff provides very few factual allegations of the dates on which any of the alleged

breaches occurred. At one point, he states that February 1, 2007, was when the "update" was issued. Doc. 14, p. 18. He further indicates that beginning on November 23, 2006, the Defendant was "lobbying" against the International Treaties. *Id.*, at 19-20. Plaintiff also claims that in March of 2008, Defendant was opposing exemptions or waivers by Continental, although it does not appear that Plaintiff would have standing to complain about those events as he was no longer employed by United after May 31, 2007. Plaintiff's allegations are, in a sense, insufficient because Plaintiff fails to allege when most of the alleged breaches occurred. Nevertheless, he does provide a few dates, and it is clear that Plaintiff was no longer employed by United on May 31, 2007. Plaintiff filed his charge of discrimination on October 22, 2007. Doc. 25, p. 29. However, Plaintiff did not initiate this action against the ALPA until June 16, 2009.

The United States Supreme Court considered the issue of what statute of limitations is applicable in a suit between an employee and his union when the employee contends the union breach its duty of fair representation[11] in DelCostello v. International Broth. of Teamsters, 462 U.S. 151, 103 S.Ct. 2281 (1983). The Court determined that a suit against a union for breach of the union's duty of fair representation, "is implied under the scheme of the National Labor Relations Act."

---

[11] The Court explained that the "duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative." DelCostello, 462 U.S. at 165, 103 S.Ct. at 2291, n.14. "In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.' " *Id.*, quoting Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967).

DelCostello, 462 U.S. at 164, 103 S.Ct. at 2290. Thus, it determined that because of the substantial overlap between unfair labor practices and a breach of fair representation by a labor union, the proper balance was to borrow § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), as the statute of limitations period for bringing such claims. DelCostello, 462 U.S. at 169-171, 103 S.Ct. at 2293-94. "The general rule is that § 10(b)'s six-month limitation period starts running when the plaintiff was or should have been aware of the acts constituting the alleged violation." Howard v. Lockheed-Georgia Co., 742 F.2d 612, 614 (11th Cir. 1984), *cited in* Proofoot v. Seafarer's Intern. Union, 779 F.2d 1558, 1559 (11th Cir. 1986). In applying those principles, the Eleventh Circuit has clarified that the "timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or the date on which the employee knew or should have known of the employer's final action, whichever occurs later." Proofoot, 779 F.2d at 1559.

Here, the last date of unfair representation alleged by Plaintiff is that in March, 2008, the ALPA was opposing exemptions and waivers of the Age 60 Rule. That date, beyond the time Plaintiff was even employed, acts as a generous time from which to begin calculating the statute of limitations, but even so, the period of limitations has expired. Because this action was initiated in June of 2009, Plaintiff's claims against the ALPA for breach of its duty of fair representation are barred by the statute of limitations. Defendant's motion to dismiss count III of the complaint should be granted as well.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, doc. 25, be **GRANTED**, and that Plaintiff's amended complaint, doc. 14, be **DISMISSED** for failure to state a claim as to counts I, II, and IV, and because count III is barred by the statute of limitations.

**IN CHAMBERS** at Tallahassee, Florida, on September 10, 2010.


 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**